**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **EPIC GAMES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 08-CV-0764-MJR** |
| | ) | |
| **ROGER ALTMEYER** | ) | |
| **(d/b/a Saint Louis Mod Shop),** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER ISSUING TEMPORARY RESTRAINING ORDER**

**REAGAN, District Judge:**

**A.  Background**

On October 31, 2008, Epic Games filed this action alleging copyright infringement and conversion (Doc. 3).  Epic seeks preliminary and permanent injunctions to stop the alleged infringement.  Epic also seeks that the illegal copies of its copyrighted material be destroyed and that Defendant pay damages.  Epic Games now moves for an ex parte TRO and impoundment order (Sealed Doc. 4).

Epic is a designer and developer of video games.  One of Epic's most successful games is *Gears of War*, which has sold over 5 million copies and has received numerous awards.  On November 7, 2008, Epic will release *Gears of War 2*, a game for which Epic is the exclusive owner of all rights, title, and interest, holding several copyright registrations and one pending copyright application (Doc. 3, Exh. A).  Epic has invested a great deal of time and money in developing and marketing these games.  Counsel indicated to the Court that Epic will offer copies of *Gears of War 2* for sale at the approximate retail price of $75.

Epic alleges that Altmeyer somehow obtained a copy of *Gears of War 2* and has been

selling pirated copies of the game, playable on the Xbox gaming system. On October 21, 2008 Altmeyer allegedly posted an advertisement on craigslist.org in which he offered advance copies of *Gears of War 2* for sale (Doc. 5, Exh. B). The advertisement provided phone numbers to a person or business in Granite City, Illinois and stated:

> GEARS OF WAR 2 FREE WITH XBOX 360 MOD. YES WE HAVE IT EARLY FULL WORKING GAME. WHY WAIT. ALL MODS ARE DONE STEALTH SO YOU WONT GET BAND FROM LIVE. OTHER PRE-RELEASE TITLES AVAILABLE. APPT AVAIL TODAY

At some point, that ad was removed, but on October 31, 2008, Altmeyer allegedly posted another advertisement indicating the early availability of *Gears of War 2* (Doc. 10, Exh. A). This advertisement states:

> GET YOUR 360 MODDED TODAY, AND GET 3 GAMES OF YOU CHOICE FREE, YES WE HAVE GEARS OF WAY 2 ALSO! OVER 400 TITLES TO CHOOSE FROM, ALL NEW GAMES TOO. WE HAVE BEEN IN BUSINESS OVER 3 YEARS, THIS IS FROM A PROFESSIONAL! DON'T TRUST A KID IN HIS MOMMYS BASEMENT, TOO MANY SYSTEMS ARENT MODDED CORRECTLY. CALL THE PRO!

The advertisement states that the contact is "Roger - Saint Louis Mod Shop" in Saint Louis / Granite City and provides the same phone number as the initial advertisement.

Additionally, the Saint Louis Mod Shop, has a page on myspace.com wherein it advertises modifications of certain gaming systems, including Xbox (Doc. 5, Exh. C). An entry on that page states:

> MODDIFYING YOUR GAMING SYSTEM
> AT OUR MOD SHOP WE MODIFY YOUR XBOX 360, Wii, PSP, XBOX TO ALLOW THEM TO PLAY DOWNLOADED, COPIED/BURNT GAMES. THIS WILL SAVE YOU TONS OF $$$. WHY PAY $50-$70 FOR A GAME WHEN YOU CAN GET IT FREE OR AT A VERY LOW PRICE.

The entry goes on to provide a price list, an email address, and the same phone numbers that appeared on the craigslist.org advertisements. It also indicates that the user of the page is a 39-year-old single male living in Granite City, Illinois.

Some background on the advertised modification is helpful at this point. At the Court's November 4, 2008 hearing, counsel elaborated on the nature and purpose of modifying the gaming system. The Xbox includes certain software that identifies the particular video game being played so as to ensure that users can only play legitimate games. In other words, the Xbox is programmed to stop users from playing pirated copies of games. The Xbox also has the capability to allow users to "play live," which means that players can connect to the internet and engage in a multi-player game format with other individuals at remote locations. To do so, players must connect to each other through an official website. The software involved in playing live is also programmed to detect modifications to the Xbox and to recognize pirated games. If a modification or piracy is detected, a user is typically banned from playing live. Some users have apparently determined how to modify an Xbox so that neither the system itself nor the live software can recognize pirated games or any modification. It is this type of modification service that Altmeyer allegedly offers so that his customers can use the pirated games he sells without being banned.

To confirm what it had already found in Altmeyer's advertisements, Epic hired a private investigator who called the numbers listed on these websites in an attempt to obtain a modification of his Xbox 360 and a pirated version of *Gears of War 2* (Doc. 6, Exh. D). The investigator spoke with a male who indicated that he did offer modification services and could provide a pirated copy of *Gears of War 2*. The investigator met with the individual at 3027 Mockingbird Lane, Granite City, Illinois 62040 on October 23, 2008 and the pair went to a garage behind the home. After looking at the investigator's Xbox, the individual stated that he could not

modify the Xbox because it was too new and suggested that he obtain a different version so that the modification could be performed. The individual stated that upon completion of the deal, he would provide *Gears of War 2* along with another free game. However, the investigator was never able to make further in-person contact or obtain an actual copy of the game.

Epic now seeks an ex parte TRO to stop distribution and production of pirated copies of *Gears of War 2* and any other titles to which Epic owns the copyright. Epic also seeks the impoundment of all pirated copies and the seizure of any devices used to circumvent copyright protections, including all computer hard drives and Xbox consoles. For the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** Epic's motion (Doc. 4).

### B.  Motion for Ex Parte TRO

Epic seeks that Altmeyer, his agents, and employees be temporarily enjoined from (1) manufacturing, advertising, marketing, distributing, transferring, selling, or destroying unauthorized, pirated, or otherwise infringing copies of DVDs of the *Gears of War* and *Gears of War 2* computer games, (2) performing, advertising, marketing, distributing, and selling game console modification services, and (3) destroying or transferring any tools, software, or hardware used to create any such modification of gaming systems or infringing copies of *Gears of War* and *Gears of War 2*.

### 1.  Legal Standards for the Issuance of a Temporary Restraining Order

FEDERAL RULE OF CIVIL PROCEDURE 65(b) authorizes the issuance of a temporary restraining order (TRO). The Seventh Circuit has emphasized that, although Rule 65(b) expressly contemplates the issuance of ex parte TROs, the circumstances under which an ex parte TRO should be granted are extremely limited. **Rule 65(f)** specifically provides that it applies to copyright impoundment proceedings.

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g., Charter Nat'l Bank and Trust v. Charter One Financial, Inc.*, **2001 WL 527404 (N.D. Ill. May 15, 2001) (unreported).** The movant must make an initial showing that (1) its case has a likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) they will suffer irreparable harm if injunctive relief is not granted. *See, e.g., Hodgkins ex rel. Hodgkins v. Peterson*, **355 F.3d 1048, 1054-55 (7th Cir. 2004).** If the movant meets the burden on these three requirements, then the Court considers two additional criteria: (4) whether the balance of harm to the plaintiff if the TRO is wrongly denied outweighs the harm to the defendant if the TRO is wrongly granted, and (5) the public interest. *Cooper v. Salazar*, **196 F.3d 809, 813 (7th Cir. 1999).**

Epic's case certainly has a likelihood of success on the merits with respect to Altmeyer's alleged piracy of *Gears of War 2*. The threshold for this showing is low and Plaintiff "need only demonstrate a 'better than negligible chance of succeeding." *Cooper*, **196 F.3d at 813.** Here, Epic raises three claims: copyright infringement, violation of the Digital Millennium Copyright Act (DMCA), and conversion. For its claim of copyright infringement, Epic must show that it owns the copyright and that Altmeyer has infringed those rights. Epic has produced evidence that it holds all relevant copyrights to *Gears of War 2*, that Altmeyer is advertising the availability of the game before its official release, and that no official copies of *Gears of War 2* are available on the market yet. Therefore, Epic has a likelihood of success as to its copyright infringement claim as to *Gears of War 2*. However, Epic also requests that Altmeyer be prohibited from taking certain actions with respect to *Gears of War*. There is absolutely no evidence or allegation that Altmeyer is actually involved in any improper conduct with respect to *Gears of War*. Thus, injunctive relief cannot be granted with respect to the original *Gears of War* game.

With respect to its claim under the DMCA, Epic requests that Altmeyer be prohibited from "performing, advertising, marketing, distributing and selling game console modification services." Epic alleges that such services violate **17 U.S.C. § 1201(2)**,[1] which provides:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that--
>
> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

Epic claims that modification of the Xbox is in fact designed to circumvent technological measures that control access to the copyrighted works of Epic and other video game manufacturers. According to the online advertisements, Altmeyer's modification of the Xbox is done in a stealth manner so that consumers can play pirated games without any detection by the gaming system. Given the evidence with respect to the modification procedures and the statement of Epic's investigator, the Court finds that Epic has a likelihood of success in proving that the modifications have "only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a [protected work]."

Additionally, Epic has no adequate remedy at law here. Money damages will not be adequate here because the ongoing production of pirated games likely infringes their copyright,

---

[1] Pursuant to **17 U.S.C. § 1203**, "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation."

diminishes Epic's marketing benefit prior to public release, and undermines the resources used to develop its games. Moreover, Epic will suffer irreparable harm if a TRO is not entered. There is an urgent need for Court action because the defendant is allegedly in the active process of producing and distributing pirated copies of *Gears of War 2*, and the official release date of the game is rapidly approaching. Given the nature of such illegal sales, it may not be possible to know how many pirated copies defendant is able to distribute in the interim.

The next inquiry is whether the equities tip in favor of the Plaintiff. In other words, the balance of harm if the TRO is wrongly denied must outweigh the harm to the defendant if the TRO is wrongly granted. The harm to Epic if the Court wrongfully denies the TRO would be a continued infringement of its copyright, potentially unquantifiable lost profits, and diminished marketing benefit. On the other hand, a wrongfully entered TRO will eliminate Altmeyer's ability to sell legitimate copies of *Gears of War 2* or perform modifications, which appear to be a large part of his business. However, the Court notes that Epic has a strong likelihood of success. Additionally, any such harm to Altmeyer would be short-lived and purely economic. With all of these considerations in mind, it is clear that the balance of equities weigh in favor of Epic.

The final prong requires the Court to consider the public interest. The public interest is best served in this case by protecting Epic's copyright. First, a TRO would protect the public's expectations that obtaining a copyright ensures one's property interest. Altmeyer's alleged acts clearly fly in the face of public policy, as their only purpose appears to be copyright infringement. Additionally, a TRO protects the public from the continued sale of pirated copies, as not all consumers may understand that they are not in fact purchasing a legitimate copy of *Gears of War 2*.

Accordingly, the Court grants in part and denies in part Epic's motion for a TRO. The motion is granted insofar as it seeks injunctive relief with respect to copies of *Gears of War 2* and gaming system modifications. However, the motion is denied insofar as it seeks relief as to any other games.

## 2. Issuing a TRO Without Notice to the Defendant

Having determined that Epic is entitled to a TRO, the Court now turns to the question of whether that TRO can be entered without notice to Altmeyer. The Seventh Circuit has repeatedly noted that the circumstances under which an ex parte TRO should be granted are extremely limited.

> The "stringent restrictions" imposed "on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, . . . but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Ex parte temporary restraining orders are most familiar to courts where notice to the adversary party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.

*American Can Co. v. Mansukhani*, 742 F.2d 314, 321–22 (7th Cir. 1984) (quoting *Granny Goose Foods*, 415 U.S. 423, 438–39 (1974)).

While the standard for granting a TRO and the standard for granting a preliminary injunction are identical, the notice provisions governing TROs are unique. Rule 65(b)(1) permits a federal court to grant a TRO without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give
notice and the reasons why it should not be required.

Additionally, under Rule 65(b), a temporary restraining order granted without notice may last no longer than ten days unless an extension, supported by a statement of reasons, is granted. *Rothner v. City of Chicago*, **879 F.2d 1402, 1419 (7th Cir. 1989).** Rule 65(b) further provides that a TRO cannot remain in effect for more than 20 days total (the original ten plus one ten-day extension), without the consent of the parties. If it is extended further, it becomes a preliminary injunction, immediately appealable to the Circuit Court. *See United States v. Board of Education of City of Chicago*, **11 F.3d 668, 671-72 (7th Cir. 1993);** *see also* **FED.R.CIV.P. 65 (b)(2).**[2]

With respect to Rule 65(b)(1)(A)–(B), Epic has provided an affidavit from Mark Rein, Epic's Vice President of Marketing (Doc. 5, Exh. A). Therein, Rein indicates that because of the small physical size of pirated DVDs, they can easily be moved or destroyed. Also, any illegal data on a computer hard drive can easily be deleted or overwritten. Accordingly, Epic indicates that if the adverse party is given notice, there is a strong risk that the pirated versions of *Gears of War 2* may be destroyed or otherwise hidden. If the Defendant has an opportunity to destroy or hide evidence, further prosecution of the action may well be useless.

Additionally, immediate irreparable loss will result before notice can be given because the public "hype" that accompanies the release of a new game is diminished by the

---

[2]

> Every temporary restraining order issued without notice must state
> the date and hour it was issued; describe the injury and state why it
> is irreparable; state why the order was issued without notice; and
> be promptly filed in the clerk's office and entered in the record.
> The order expires at the time after entry—not to exceed 10
> days—that the court sets, unless before that time the court, for
> good cause, extends it for a like period or the adverse party
> consents to a longer extension. The reasons for an extension must
> be entered in the record.

defendant's illegal actions.  Moreover, Epic will continuously suffer infringement of its copyright so long as Altmeyer possesses and distributes illegal copies.  Clearly, irreparable harm to Epic exists in the form of a continued violation of its copyright and the damage to its pre-release marketing campaign.

In light of these considerations, the Court finds that Epic has met the standard for issuance of an ex parte TRO.

## 3.  Security

FEDERAL RULE OF CIVIL PROCEDURE 65(c) provides:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

The literal reading of Rule 65(c) provides that security is mandatory, and the Seventh Circuit has generally required that security be given.  **See Minnesota Power & Light Co. v. Hockett, 14 Fed.Appx. 703, 707 (7th Cir. 2001) ("Posting such a security . . . is the cost of doing business in federal court."); Cronin v. U.S. Dep't of Agriculture, 919 F.2d 439, 445 (7th Cir. 1990) (explaining that Rule 65(c) "makes such security mandatory, although a number of environmental decisions . . . waive the requirement or allowing the posting of a nominal bond.").**

The Court finds that security in the amount of $1,500 is sufficient under the circumstances of this case.  This amount may be increased, if necessary, based upon an appropriately filed motion by the Defendant supporting such an increase.

## C. Impoundment and Seizure

Epic also requests that the Court order the seizure and impoundment of various items by the United States Marshal. Specifically, Epic seeks the seizure of (I) any and all unauthorized DVDs of the *Gears of War* and *Gears of War 2* computer games, as well as any other unauthorized DVDs of computer games of which Plaintiff is a copyright owner, (ii) any and all computer hard drives, (iii) any and all Xbox 360 game consoles, and (iv) all copyright circumvention devices and the means for producing those goods and devices.

The legal bases for the impoundment request are **17 U.S.C. §§ 503(a)** and **1203(b)(2)**. **Section 503(a)(1)** provides that:

> At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable—
>
> (A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner;
>
> (B) of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies of phonorecords may be reproduced; and
>
> (C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court.

**Section 1203(b)(2)** provides that the court,

> at any time while an action is pending, may order the impounding, on such terms as it deems reasonable, of any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation . . .

Certainly, under these standards, the Court can impound any copies of *Gears of War 2* that may be in the possession of Altmeyer. But again, the complaint makes no allegation

that *Gears of War* or any other software to which Epic owns a copyright have been or are being pirated. Therefore, the request for the impoundment of these additional games is too broad.

Also, the request for a seizure of all computer hard drives, copyright circumvention devices, the means for producing those goods and devices, and all Xbox 360 game consoles is overbroad and excessive. There is no allegation that such hardware in general contributes to the alleged copyright infringement involved in this case. Indeed, there may be entirely innocent hard drives, devices, tools, and game consoles in Altmeyer's possession. These may include generic tools which have proper uses separate and apart from the alleged conduct. Without a specific indication of how the Court can distinguish legitimate from illegitimate hardware or tools, such a seizure is not warranted.

Accordingly, the Court grants in part and denies in part Epic's motion for impoundment and seizure. The motion is granted only insofar as it seeks the impoundment and seizure of any and all unauthorized DVDs of the *Gears of War 2* video game. The terms of this impoundment shall be set out in a forthcoming order.

### D. Terms of the TRO

Therefore, at 9:30 a.m. on this 5th day of November 2008, this Court **ISSUES** a Temporary Restraining Order enjoining and prohibiting the Defendant, his agents, servants, employees, attorneys, and all persons acting in concert and participation with him as follows:

Altmeyer is hereby temporarily enjoined from manufacturing, advertising, marketing, distributing, transferring, selling, or destroying unauthorized, pirated, or otherwise infringing copies of DVDs of the *Gears of War 2* video game.

Additionally, Altmeyer is temporarily enjoined from performing, advertising, marketing, distributing, and selling game console modification services.

-12-

Altmeyer is further ordered to remove any advertisement for such modification services, as well as advertisements for the *Gears of War 2* video game.

Altmeyer is also enjoined from destroying or transferring any tools, software, or hardware used to create any such modifications of gaming systems or used to create infringing copies of *Gears of War 2*.

Epic shall post security **in the amount of $1,500 no later than 9:00 a.m. on November 14, 2008.**

This Temporary Restraining Order will **EXPIRE at 9:00 a.m. on November 14, 2008**, but may be extended upon proper motion and for good cause shown, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 65.**

The parties shall appear before the undersigned District Judge at **9:00 a.m. on November 14, 2008** for a hearing on Epic's request for a preliminary injunction.

### E.  Conclusion

Accordingly, as explained above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Epic's motion for an ex parte temporary restraining order and impoundment order (Doc. 4).  The terms of impoundment shall be set out in a separate order.

**IT IS SO ORDERED.**

**DATED this 5th day of November 2008, at 9:30 a.m.**

s/ Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**